Kenneth L. Gregory (SBN 023236)
GREGORY LAW OFFICE, PLC
3640 Hwy 95 Ste 140
Bullhead City, AZ 86442
Phone: (928) 704-7267
kenneth.gregory@azbar.org

Attorney for Creditors Bonnie Goler,
Julie Goler, and Alissa Goler

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA, YUMA DIVISION

| | |
|---|---|
| In re: | Chapter 13 |
| ROBERT DEUTSCH, | Case No.  0:10-bk-40888-RJH |
| Debtor. | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |

Creditors Bonnie Goler, Julie Goler, and Alissa Goler, by and through their undersigned counsel, hereby move for relief from the automatic stay imposed by 11 USC § 362(a), for the purpose of carrying forward multi-party litigation pending before the Mohave County Superior Court, Deutsch v. Ostroweicki et al., Case No. 2010-04088, wherein Debtor is alleged to have breached his fiduciary duties as the Manager of two companies. For the reasons that follow, relief should be granted.

I.      **FACTUAL BACKGROUND**.

Debtor Robert Deutsch is a California attorney of 25 years. On August 13, 2009, he filed with this Court for Chapter 7 bankruptcy protection, receiving a discharge on February 5, 2010. See, In re Deutsch, Case No. 0:09-bk-19421-RJH. In Schedule "B" to his Chapter 7 Petitions, Debtor listed himself as the beneficiary of two "spendthrift" trusts, the Mayer

Deutsch Trust and the Anna Deutsch Trust (collectively the "Deutsch Trusts").  See, **Exhibit "1"** at B:2.  At the time, Debtor was the Manager of two limited liability companies that operated two respective hotel properties in Bullhead City, known as Nevada Club Inn ("NCI") and River Valley Suites ("RVS").  Debtor claimed to earn $1,000.00 per month from managing NCI.  Id. at I:13(a).

On March 15, 2010, by formal resolution of the majority members, Debtor was terminated as Manager of NCI and RVS for the stated reasons that he had:

(i) misappropriated the Companies' funds for personal purposes;

(ii) failed to provide the Members with full, truthful, accurate, and adequate information regarding the financial and operating condition of the Companies;

(iii) failed to cause the Companies to comply with all of its obligations to pay local payroll and other taxes; and

(iv) engaged in repeated acts of mismanagement and gross negligence.

See, **Exhibit "2"** hereto.

About three or four weeks after his termination, the Anna Deutsch Trust initiated a trustee's sale foreclosure against NCI.  See, **Exhibits "3" and "4"** hereto.  Thereafter, on May 10, 2010, *a mere three months following Debtor's discharge in Chapter 7*, Debtor's mother, as Trustee, distributed *all* of the assets of the Mayer Deutsch Trust to Debtor.  See, "Distribution" at **Exhibit "5"** hereto.  Those assets included, but were "not necessarily limited to," the Trust's 15% membership interests in RVS and 12.5% membership interest

Case 0:10-bk-40888-RJH    Doc 37    Filed 02/04/11    Entered 02/04/11 19:30:11    Desc
Main Document    Page 2 of 10

in NCI. Id. At the 341 hearing in this matter on January 18, 2011, Debtor testified that he in fact prepared the Distribution and "counseled" his mother concerning the same.

At the time of its distribution to Debtor, the Mayer Deutsch Trust also held interests in the legal titles to two apartment buildings located in Los Angeles, California, near Beverly Hills, including a 6.25% interest in property at 3360-3364 West 9th Street and a 12.5% interest in property at 1124 Rexford Drive. See, **Exhibits "6" and "7"** hereto. Debtor did not list those assets in his bankruptcy petitions. He claims that the interests in the California properties were exchanged for additional membership interests in NCI; however, Debtor's petitions list only a 12.5% interest in NCI, not the 40.625% he purports to have actually acquired in the exchange. See, **Exhibit "8"** hereto. Debtor's Petition states that NCI is worth $1.3M. See, Schedule "A" to Debtor's Ch.13 Petition.

On May 12, 2010, just two days after the Mayer Deutsch Trust distributed its interests to him, Debtor commenced a lawsuit against members of RVS. See, **Exhibit "9"** hereto. The lawsuit seeks, among other things, to dissolve RVS under partnership law.[1] Id. One of the defendants, Morris Ostroweicki, is a resident of Tokyo, Japan, while others reside in New Jersey and California. Id. at p.2. The Golers defended the state court action and brought third party claims against NCI and its members. They also brought claims alleging that Debtor breached his fiduciary duties and acted in concert with his mother in seeking to foreclose against NCI in favor of the Anna Deutsch Trust (of which Debtor is a beneficiary). See, **Exhibit "10"** hereto.

-3-

On November 24, 2010, by resolution of the voting members of RVS and NCI, a new Manager, Rusti Holguin, was appointed to be the corporate and on-site manager of the hotels. See, **Exhibit "11"** at ¶3 hereto. Debtor thereafter attempted to take the computer at NCI's management office and he made repeated requests for the hard drive. Id. at ¶4. Ms. Holguin discovered that Debtor maintained on that computer a set of accounting records separate from the information he provided to NCI's accountants and members. Id. at ¶5. Debtor failed to deposit substantial sums of cash income into the company's bank accounts. Id. at ¶6-7. According to the in-house books, over a nine month period Debtor had taken $21,503.11 from the cash drawer. Id. Although he evaded the question at the 341 hearing on January 18, 2011, Debtor eventually confessed that he had in fact taken cash from the drawer.

Prior to the filing of Debtor's Chapter 13 petition, on application, the Deutsch Trusts were placed into default in the state court action for failing to answer the Golers' claims. See, **Exhibit "12"** hereto. Weeks after the entries of their defaults, the trusts retained counsel who filed a motion to set aside, on the alleged grounds that Anna Deutsch is incompetent. See, **Exhibit "13"** hereto. The Golers filed an opposition to that motion, but Debtor's filing for Chapter 13 bankruptcy has stayed those proceedings. See, **Exhibit "14"** hereto.

---

[1] The apparent reason for this was that the RVS hotel was titled in a co-tenancy consisting of the members of the related limited liability company.

-4-

## II. **ARGUMENT**.

The decision to grant or deny relief from the automatic stay lies within the sound discretion of the bankruptcy court. In re Conejo Enterprises, Inc., 96 F.3d 346, 351, 65 (9th Cir. 1996). Upon a showing of cause, relief from the stay must be granted. Id. at 352.; 11 U.S.C. § 362(d). The Court may consider the interests of judicial economy and estate administration in determining whether the stay should be lifted. Id. at 353. Stay relief may be granted in order to conclude issues pending before a state court where the suit involves multiple parties, or where doing so would appropriately relieve the bankruptcy court of its duties and not prejudice the estate. See, In re Plumberex Specialty Products, Inc., 311 B.R. 551, 556-557 (Bankr. C.D. Cal. 2004).

The set of twelve nonexclusive factors set forth in In re Curtis, 40 B.R. 795 (Bank.D.Utah 1984) is soemtimes cited by bankruptcy courts in determining whether a stay of pending litigation should be lifted. Id. at 559. Those factors include:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

-5-

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt,"

       <u>Curtis</u>, at 799-800.

      A debtor is not entitled to a discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523. Likewise, a Chapter 13 debtor may not be discharged where the debtor was granted a Chapter 7 discharge at any time during the four years preceding an order for relief. 11 U.S.C. § 1328.

      Relief should be granted from the automatic stay in this case in order to allow the state court litigation to go forward. First, there is ample evidence of abuse and bad faith. Debtor has not truthfully provided information concerning his assets in his Chapter 13 petitions. He failed to list the assets that were distributed to him from the Mayer Deutsch Trust, which includes interests in the legal titles to two apartment buildings near Beverly Hills. Those are substantial assets and should be included in the bankruptcy estate, not hidden from creditors and the trustee. Debtor now submits that he exchanged those interests

for membership interests in NCI. If that is true, then he failed to truthfully state the amount of his true interest in NCI. He reports owning a 12.5% interest in NCI, which he claims is worth $150,000 and exempt as a homestead due to his occupancy of the hotel's "manager's apartment". However, if the California properties were truly transferred, the according to Debtor's own records he would own 40.625% of NCI.

Further abuse is evidenced by Debtor's proposed Chapter 13 plan. Debtor claims that he makes $3,000 per month as the Manager of NCI. However, he was terminated from that position before filing his Chapter 13 bankruptcy. Debtor's statement of that income also contradicts what he provided this Court about a year earlier in his Chapter 7 bankruptcy, wherein he stated that he received $1,000 per month as the Manager of NCI. Debtor was keeping separate books when he was managing the hotels. He took numerous cash draws from the company's money drawer without consent of the companies and without reporting the income to the accountants or members. His alleged monthly income of $3,000 is either a fiction or results from misappropriated funds. To further illustrate the extent of Debtor's wrongdoing, Debtor testified at his 341 hearing that he recently received a utility deposit reimbursement belonging to NCI and used it to pay for his membership dues to the State Bar of California.

The timing of Debtor's Chapter 13 bankruptcy filing strongly evidences a motivation to frustrate the state court action. A new Manager had just been appointed at the hotels and she initiated an eviction action to remove Debtor from the manager's apartment at NCI (stay relief was just granted in that matter). Significantly, the Deutsch Trusts were also in

imminent danger of having default judgments entered against them. Debtor's bad faith is evident in that he is really attempting to escape the consequences of his actions and preserve the assets of the Anna Deutsch Trust, his mother's *inter vivos* trust, of which he is a beneficiary.

The state court action includes individual parties from Tokyo, Japan, and the states of New Jersey, California and Arizona. The Deutsch Trusts and the two holding companies for the hotels are also named. All have been served with process, the Superior Court judge has already heard matters concerning injunctive relief, and an undecided motion is pending. The matters at issue in the state court action concern Arizona law. Complete resolution of the controversy may be attained in that court.

Allowing the state court action to proceed would not interfere with the bankruptcy case. The claims against Debtor in state court action concern alleged embezzlement, the most compelling evidence of which – the computer files – was seized immediately prior to Debtor's filing for bankruptcy protection. Debtor, as the Manager of both RVS and NCI, acted as a fiduciary. His concealment and misappropriation of company monies amounts to a fraud, if not also tax evasion. Accordingly, Debtor cannot be granted a discharge in this matter pursuant to 11 U.S.C. § 523. Likewise, due to Debtor's discharge in Chapter 7, not even a year earlier, he cannot be granted a discharge from any judgment that would result from the matters currently before the state court. 11 U.S.C. § 1328.

Considerable time and effort have been expended in the state court action. Although the matter has not progressed to a trial setting, it would be in the interest of judicial

economy, and the expeditious and economical determination of litigation, for the parties to finish what they've started in state court. This is especially true as some of the parties, all of the parties' attorneys, and many witnesses live in the immediate locale of the Superior Court (Bullhead City) and would therefore not be required to attend federal court at a location several hours away to carry on with their claims.

III. **CONCLUSION**.

For the above reasons, there is manifest evidence of bad faith in Debtor's bankruptcy filing and factors "1", "2", "3", "10" and "12" of the Curtis test are satisfied. The Court should find that adequate cause exists to terminate the automatic stay of 11 U.S.C. §362(a) to allow applicant Creditors to go forward with their claims against Debtor and other parties in the action filed in the Superior Court of Arizona, Mohave County, Case No. CV 2010-04088.

RESPECTFULLY SUBMITTED this 4th day of February, 2011.

GREGORY LAW OFFICE, PLC

Kenneth L. Gregory
Attorney for Bonnie Goler, Julie Goler,
and Alissa Goler

**Certificate of Service**

**ORIGINAL** of the foregoing e-filed
with the Clerk of the Court this
_4_ day of ___FEB___, 2011 and
COPIES mailed to:

Russell Brown
Ch. 13 Trustee
3838 N. Central Ave. Ste. 800
Phoenix, AZ 85012-1965

Robert Deutsch
336 Lee Ave. Apt. 222
Bullhead City, AZ 86430

Frank T. Waters
5287 Hwy 95 Ste D
Fort Mohave, AZ 86426

*Exhibits sent on CD-ROM*

By: _____

-10-